UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE BAKER,<br>  Plaintiff,<br>v.<br>COUNTY OF SAN MATEO, et al.,<br>  Defendants. | Case No. 20-cv-06058-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 11 |

Plaintiff Catherine Baker filed this suit against the County of San Mateo and two of its employees, Janine Keller, and Dr. Loc Nguyen (collectively, "Defendants"), alleging that they treated her improperly and discriminated against her because of her disability, sex and/or race. She brings two causes of action: (1) harassment, discrimination, and failure to provide reasonable accommodations for her disability in violation of the California Fair Employment Housing Act (FEHA), Cal. Gov't Code §§ 12900–12996; and (2) discrimination on the basis of disability, sex, and/or race in violation of 42 U.S.C. § 1983.

Pending before the Court is Defendants' partial motion to dismiss Ms. Baker's second cause of action under § 1983. Having considered the parties' briefs, accompanying submissions, and the oral argument of counsel, the Court **GRANTS** Defendants' motion to dismiss.

## I.  BACKGROUND

A.  Factual Background

Ms. Baker's complaint alleges the following. Ms. Baker began working for the County as a social worker in 2006. *See* Docket No. 1 ("Compl."), ¶¶ 4, 14, 25. In October 2009, Ms. Baker was instructed by her employer to go out on sick leave because she was experiencing lower back

1   pain. *Id.* ¶ 4. In 2011, after evaluating Ms. Baker and reviewing her medical records, Drs. Lipton
2   and Stark[1] concluded that Ms. Baker had a congenital condition known as Bertolotti Syndrome,
3   which had been made symptomatic because of her work. *Id.* The doctors further concluded that
4   Ms. Baker had reached maximum medical improvement, that she was permanently stationary, and
5   that she could return to work only if she refrained from lifting children. *Id.* Despite full
6   cooperation by Ms. Baker, the County did not provide Ms. Baker with reasonable
7   accommodations, instead forcing her to exhaust her medical leave and available short-term
8   disability benefits. *Id.*

9   In May 2015, Keller[2] advised Ms. Baker that the County would "resume" the disability
10  accommodation process under the Americans with Disabilities Act (ADA) and FEHA. *Id.* ¶ 5.
11  But according to Ms. Baker, there was nothing to "resume" because the County had not previously
12  participated in the reasonable accommodation process, despite having a clear legal obligation to do
13  so. *Id.* In July 2015, Keller contacted nurse practitioner Amanda Kelly, purportedly seeking
14  information to help Keller determine whether Ms. Baker could perform her job duties. *Id.* ¶ 6.
15  This was unnecessary, according to Ms. Baker, because Drs. Lipton and Stark had already
16  determined she had reached maximum medical improvement and could return to work with lifting
17  restrictions. *Id.* ¶¶ 4, 6.

18  On August 19, 2015, the County denied Ms. Baker's request for voluntary time off, even
19  though she had exhausted her disability benefits and—for six years—the County had made no
20  effort to reasonably accommodate her disability. *Id.* ¶ 7. That same day, N.P. Kelly sent a memo
21  to Keller outlining work restrictions for Ms. Baker, and Ms. Baker sent Keller an e-mail
22  requesting a meeting with the County to locate a position where Ms. Baker's medical needs could
23  be accommodated. *Id.* ¶¶ 8, 9. Two weeks later, on August 27, 2015, Keller e-mailed Ms. Baker
24  describing her understanding of Ms. Baker's work restrictions and advising that she would have a

---

[1] The Complaint does not provide a full name for Drs. Lipton and Stark.

[2] The Notice of Removal provides a footnote stating that Keller is a former County employee, but it appears that Keller helped manage Ms. Baker's ADA/FEHA reasonable accommodation process. *See* Compl. ¶¶ 5, 16.

meeting with Ms. Baker's department head, Dr. Nguyen, "to discuss the above limitations" and to determine "what, if any, reasonable accommodations can be offered." *Id.* ¶ 10. At the County's request, Ms. Baker attempted to return to work for a couple of months, but the County made no effort to accommodate her, so she was unable to continue. *Id.* ¶ 11. Instead, she remained an unpaid employee of the County. *Id.* ¶ 13.

While she was waiting to hear back from Keller and Dr. Nguyen, Ms. Baker was evaluated, at the County's request, by Dr. Honda.[3] *Id.* ¶ 14. Dr. Honda reached the same conclusions as Drs. Lipton and Stark—that Ms. Baker was disabled and could return to work as a social worker provided there were reasonable restrictions on lifting. *Id.* Ms. Baker claims that the County could and should have accommodated those restrictions but chose not to. *Id.*

Dr. Nguyen sent Ms. Baker a letter on behalf of the County on December 2, 2016—a year and a half after Keller's August 2015 e-mail to Ms. Baker—advising Ms. Baker that she was ineligible for any further medical leave. *Id.* ¶ 12. In the letter, Dr. Nguyen gave Ms. Baker three options: (1) return to work on December 15, 2016 without any accommodations; (2) "resume" the ADA/FEHA interactive accommodation process with Keller; or (3) quit, without disability pay.[4] *Id.* Dr. Nguyen also instructed Ms. Baker that she would be deemed insubordinate and terminated if she failed to report for work without accommodation on December 15, 2016. *Id.* ¶ 13. Given the limited options with which she was presented, Ms. Baker—who remained employed by the County, without pay—chose to "'resume' the interactive process, as offered." *Id.*

On March 15, 2017, Keller sent Ms. Baker a second letter informing her that, as far as Keller and the County were concerned, Ms. Baker was permanently precluded from returning to work as a social worker. *Id.* ¶ 16. Based on this directive from Keller, Ms. Baker filed an application in March 2017 for disability retirement with SamCERA, an independent entity that administers the County's disability retirement program.[5] *Id.* ¶ 18. In the meantime, Ms. Baker

---

[3] The Complaint does not provide a full name for Dr. Honda.

[4] Importantly, Ms. Baker does not attach a copy of the letter to her complaint.

[5] Ms. Baker's complaint does not allege the exact date of her application for disability retirement in her complaint.

3

remained an unpaid employee of the County. *Id.*

SamCERA took nearly three years to adjudicate Ms. Baker's application. *Id.* In 2019,[6] SamCERA determined that Ms. Baker was entitled to disability retirement starting in January 2016. *Id.* ¶ 19. SamCERA reasoned that it could move the application back from March 2017 to January 2016 because that was the last date that Ms. Baker received compensation from the County. *Id.* SamCERA could not push the application back any further, however, because the County forced Ms. Baker to work—without accommodations—from August 2015 to January 2016. *Id.* Ms. Baker therefore contends that, had the County determined that she was disabled and that it was unable or unwilling to accommodate her disability in a timely manner, she would have been eligible to receive disability back pay starting as early as 2009 or 2011, when she first started feeling back pain or when she was first diagnosed with Bertolotti Syndrome, respectively. *Id.* Ms. Baker also states that she "complied with and/or exhausted her administrative remedies," "timely obtained a FEHA right-to-sue letter," and "timely filed a claim with the County of San Mateo," which was denied on January 30, 2020. *Id.* ¶ 3.

B.  Procedural Background

Ms. Baker filed her complaint in the Superior Court of California, County of San Mateo, on July 6, 2020, alleging two causes of action: (1) harassment, discrimination, and failure to provide reasonable accommodations to an employee with a physical disability in violation of FEHA; and (2) employment discrimination because of disability, sex, and/or race in violation of § 1983.[7] *See id.* On August 28, 2020, Defendants removed the case to this Court and moved to dismiss the § 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 11, 2020, contending that Ms. Baker's §1983 claim is time barred by the applicable statute of

---

[6] Ms. Baker does not allege the exact date that her disability application was approved by SamCERA in the complaint, stating only that the "process took nearly three years" from March 2017. Compl. ¶ 18. In her opposition, Ms. Baker also states that her application was approved in 2019, without providing an exact date. *See* Docket No. 12 ("Opp'n."), at 2, 3–5, 9. The application might have been approved after September 2019, because this is when Ms. Baker retained counsel for help with the retirement process. *Id.* at 3.

[7] Ms. Baker's complaint alleges a cause of action for a violation of "24 U.S.C. § 1983," but the correct statute is 42 U.S.C. § 1983. This is clearly a clerical error.

4

limitations.  *See* Docket No. 11 ("Mot.").[8]

## II.  LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).[9] "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.  DEFENDANTS' MOTION TO DISMISS

Defendants contend that Ms. Baker's second cause of action under § 1983 should be dismissed because it is time-barred.  Mot. at 4.  Ms. Baker responds that (1) her "actual injury did not occur until 2019 when her disability retirement application was approved" and (2) her "claim is not time-barred because of the application of equitable estoppel and/or equitable tolling." *See* Opp'n. at 2.

A.  Statute of Limitations

The Court finds that Ms. Baker's second cause of action under § 1983 is untimely.  Federal

---

[8] Defendants re-noticed this Motion after judicial reassignment.  Mot. at 1.

[9] A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

courts borrow state statutes of limitations in § 1983 lawsuits because § 1983 contains no specific statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The Ninth Circuit has held that the statute of limitations for a § 1983 employment discrimination claim is one year. *Lukvosky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).

Although state law determines the applicable statute of limitations period, federal law determines when a cause of action accrues and the statute of limitations begins to run in a § 1983 action. *See Wallace*, 549 U.S. at 388. The Ninth Circuit has held that "[a] federal claim [under § 1983] accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (quoting *Norco Constr., Inc. v. King Cty.*, 801 F.2d 1143, 1145 (9th Cir. 1986)). More recently, the Ninth Circuit has clarified that "[i]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff 'knows or has reason to know of the actual injury.'" *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) (quoting *Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016)).

The County notified Ms. Baker that she "was permanently precluded from returning to work as a social worker" on March 25, 2017. Compl. ¶¶ 16–18. At that point Ms. Baker knew she had been injured by the County because the County was unwilling or unable to accommodate her disability. *Id.* ¶ 16. In other words, Ms. Baker's claim accrued, and the statute of limitations began to run, on March 25, 2017.

Accordingly, because Ms. Baker filed her complaint on July 6, 2020, more than three years after her claim accrued in March 2017, her §1983 claim is time-barred under the applicable one-year statute of limitations.

B.      Equitable Tolling

Ms. Baker contends that she is entitled to equitable tolling from March 2017 to the time that SamCERA denied her application for disability retirement. Opp'n. at 6, 8–9. "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). The doctrine "is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the

statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.'" *Id.* (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 262 Cal. Rptr. 716, 738–39 (App. 4th Dist. 1989)).

Because federal courts borrow California's statute of limitations, they also apply California's equitable tolling rules. *Id.* In determining the availability of an equitable tolling, the Court considers: (1) the reasons for the plaintiff's delay in filing suit and (2) the prejudice to the defendant if the case were to go forward. *See Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (quoting *Lantzy v. Certex Homes*, 73 P.3d 517, 523 (Cal. 2003), *as modified* (Aug. 27, 2003) ("California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.'"). "Under California law, equitable tolling 'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies [s]he, reasonably and in good faith, pursues one designed to lessen the extent of h[er] injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. State*, 578 P.2d 941, 943 (Cal. 1978)). Where a remedy pursued affords notice to the defendant, the danger of prejudice to the defendant is absent, and thus equitable tolling of the limitations period may be appropriate. *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002). Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court. *See*, *also McDonald*, 194 P.3d at 1032–33 (addressing "the strand of equitable tolling arising from pursuit of an alternate administrative remedy"; stating that equitable tolling in this situation "require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff'").

In the instant case, Ms. Baker voluntarily pursued an alternate remedy, but the balancing test does not weigh in favor of applying equitable tolling. The three required elements for equitable tolling in *McDonald* are not satisfied here. The parties do not dispute that Ms. Baker's conduct was reasonable and in good faith. Ms. Baker was engaged in an ADA/FEHA interactive process with the County to find an accommodation for her disability from 2015 to 2017. Compl. ¶¶ 5–16. Ms. Baker states that she "trusted and believed" in the County "and reasonably and

7

1  diligently followed instructions" when she applied for disability retirement, which took three years
2  shortly after being refused employment with accommodations. Opp'n. at 8–9. Ms. Baker claims
3  after she received notice of her disability benefits, she obtained a FEHA right-to-sue letter and
4  timely filed a governmental claim with the County, which was denied on January 30, 2020.
5  Compl. ¶ 3.

6      The problem is that Ms. Baker's application for disability retirement did not give
7  Defendants timely notice of Ms. Baker's discrimination claim. *See McDonald*, 194 P.3d at 1033
8  (stating that "the principal policy behind the statute of limitations" is satisfied by the filing of an
9  administrative claim when it gives "a defendant notice of the claims against it so that it may gather
10 and preserve evidence"). Her disability claim was different from her discrimination claim. If
11 anything, her employment discrimination claim was the opposite of her long-term disability
12 claim—the former requires plaintiff to show that she *can* work if the employer accommodates her
13 disability and the latter requires plaintiff to show that she *cannot* work at all. And importantly the
14 disability claim did not require a showing of employment discrimination. *Compare Green v.*
15 *State*, 165 P.3d 118, 124 (Cal. 2007) ("the FEHA and the ADA both limit their protective scope to
16 those employees with a disability who can perform the essential duties of the employment position
17 with reasonable accommodation"), *with Flint v. Sacramento Cty. Emps.' Ret. Ass'n.*, 210 Cal.
18 Rptr. 439, 440 (App. 3d Dist. 1985) ("Section 31720 provides for the disability retirement of a
19 member of the retirement system who is 'permanently incapacitated for the performance of
20 duty.'").

21     Moreover, Defendants would be prejudiced because it was filed more than three years after
22 Ms. Baker's claim accrued in March 2017; this lengthy passage of time could lead to loss of
23 evidence and witness memory. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191,
24 1204 (9th Cir. 2014) ("The California Supreme Court has reasoned that the primary purpose of a
25 limitations statute is to "'(prevent) surprises through the revival of claims that have been allowed
26 to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'").

27     Accordingly, this Court declines to equitably toll the applicable statute of limitations for
28 Ms. Baker's § 1983 claim.

C.  Equitable Estoppel

Ms. Baker also argues that Defendants are equitably estopped from raising the statute of limitations defense. Opp'n. at 6. "Equitable estoppel . . . focuses primarily on actions taken by the defendant to prevent plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky*, 535 F.3d at 1051 (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)). Here, Ms. Baker's complaint states she filed an application for disability retirement because she received an "unequivocal directive from Ms. Keller" that Ms. Baker "was permanently precluded from returning to work as a social worker." *Id.* ¶¶ 16–18. However, Ms. Baker's complaint does not allege that Keller directed her to file for disability retirement with SamCERA, let alone that Keller—or any of the Defendants—told her to do so in lieu of a discrimination claim. Therefore, because there is no "fraudulent concealment" by Defendants alleged in the complaint, the Court declines to apply equitable estoppel.

## IV.  CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **GRANTED**, and Ms. Baker's second cause of action under 42 U.S.C. § 1983 is hereby **DISMISSED**.

This order disposes of Docket No. 11.

**IT IS SO ORDERED**.

Dated: November 19, 2020

_____
EDWARD M. CHEN
United States District Judge